TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
LINDSAY M. BAILEY (Cal. Bar No. 285047)
Assistant United States Attorney
Deputy Chief, General Crimes Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6875
    Facsimile: (213) 894-0141
    E-mail:    lindsay.bailey@usdoj.gov
             lindsay.bailey@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>          v.<br><br>HENRY MENDOZA,<br><br>       Defendant. | No. CR 16-390(A)-PA-19<br><br>GOVERNMENT'S SENTENCING POSITION<br>FOR DEFENDANT HENRY MENDOZA<br><br>Sentencing Date: April 21, 2022<br>Sentencing Time: 11:00 a.m. |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Lindsay M. Bailey, hereby files its Sentencing Position regarding defendant HENRY MENDOZA ("defendant").

    This Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, the United States Probation Office's Revised Presentence Report, and such further evidence and argument as the Court may permit.

1     The government reserves the right to file any supplemental

2  sentencing position that may be necessary.

3  Dated: April 19, 2022          Respectfully submitted,

4                                 TRACY L. WILKISON
                                  United States Attorney
5
                                  SCOTT M. GARRINGER
6                                 Assistant United States Attorney
                                  Chief, Criminal Division
7

8                                 _____/s/_____
                                  LINDSAY M. BAILEY
9                                 Assistant United States Attorneys

10                                Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3   On March 11, 2019, defendant Henry Mendoza was sentenced to a
4   total term of imprisonment of 180 months following his convictions at
5   trial for RICO Conspiracy, in violation of 18 U.S.C. § 1962(d) (Count
6   One); Conspiracy to Possess with Intent to Distribute and
7   Distribution of Controlled Substances, in violation of 21 U.S.C. § 21
8   U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(viii) (Count Eleven); Possession
9   of a Firearm in Furtherance of a Drug Trafficking Crime, in violation
10  of 18 U.S.C. § 924(c) (Count Twenty-Three); Felon in Possession of a
11  Firearm, in violation of 18 U.S.C. § 922(g) (Count Forty); and simple
12  possession of methamphetamine, in violation of 21 U.S.C. § 844. (Dkt.
13  2650.)

14  On February 8, 2022, the Ninth Circuit Court of Appeals ordered
15  the Court to vacate defendant's convictions for Counts One, Eleven,
16  and Twenty-Three of the First Superseding Indictment ("FSI") and
17  enter a directed judgment of acquittal, which went into effect on
18  March 3, 2022. (Dkt. 4409.)  On April 18, 2022, the Court set the
19  resentencing hearing for April 21, 2022. (Dkt. 4424.)

20  Although defendant now faces resentencing solely for being a
21  felon in possession of a firearm and simple possession of
22  methamphetamine, the circumstances of defendant's convictions remain
23  extremely aggravating.  Not only did defendant possess a loaded
24  firearm along with large quantities of methamphetamine upon his
25  arrest in December of 2016, he previously carried a "gang" gun loaded
26  with hollow-point bullets while in possession of 16 grams of
27  extremely pure methamphetamine in June of 2013.  Defendant's repeated
28  willingness to mix dangerous firearms with methamphetamine support a

time-served sentence and a high-end guidelines period of supervised release of three-years.

II.   **STATEMENT OF FACTS**

The government presented evidence at trial of the following facts:

The Canta Ranas Gang (the "CR Gang") is a multi-generational criminal street gang founded in Santa Fe Springs, California, in the late 1940s to early 1950s.  In English, the name "Canta Ranas" means "Singing Frogs" and the gang adopted Canta Ranas as its name because the neighborhood in which it was founded was a flood ranch that had frogs that would croak following heavy rains, as if they were singing.  In the name of Mexican Mafia member David Gavaldon ("EME D.G."), the CR Gang claimed criminal control over primarily the Whittier and Santa Fe Springs areas (the "CR Gang Territory").  While incarcerated, EME D.G. delegated authority over the CR Gang to co-defendant Jose Loza as EME D.G.'s "keyholder" or "shotcaller."

At age 15, defendant became a member of the CR Gang after being "jumped in" by other, more senior members.  During the time period identified in the FSI, defendant continued to associate with members of the CR Gang, obtained tattoos of CR Gang related imagery, and use coded language and phrases directly associated with the CR Gang.

Specifically, on June 1, 2013, defendant called David Gaitan, the right-hand man to Jose Loza, and made arrangements to pick up "dibs" from Gaitan the following day.  On June 2, 2013, Gaitan obtained a large quantity of methamphetamine from a supplier and subsequently told defendant that defendant could get the methamphetamine from Gaitan later that day.  Law enforcement officers then saw defendant arrive at Gaitan's house, walk inside empty-

handed, and walk out with his hands in his pocket.  Former Whittier Police Department Officer Robert Rodriguez then stopped defendant, searched defendant and his car, and recovered approximately 16.2 grams of methamphetamine, a police scanner, and a 9mm Glock semi-automatic pistol loaded with hollow-point bullets (the "Glock Pistol").  Additional testimony established that the Glock Pistol had been used approximately one week prior to shoot at a rival gang member, Tommy Gomez of Las Tres Palmas, while Gomez was in CR Gang Territory.  Expert testimony also established that hollow-point bullets are intended to explode upon hitting their intended target, leaving shrapnel in the victim's body and causing the maximum amount of damage possible.

Following the seizure of this methamphetamine, Jose Loza called numerous CR Gang members inquiring about defendant's whereabouts and attempted to collect money from defendant for the seized drugs. Defendant eventually called Loza directly and ultimately paid Loza in cash for his drug debt.

In April and May of 2016, defendant exchanged text messages with Leonardo Antolin, another high-ranking CRO member, to request distribution quantities of drugs.  Specifically, on April 25, 2016, defendant texted Antolin "Where you at i need a half O," referencing one-half ounce of drugs.  On May 15, 2016, defendant again texted Antolin and asked for "a quarter," later stating "Shoot me a half for 150," again referencing drug quantities.

On December 8, 2016, defendant possessed a distribution quantity of approximately 3.5 grams of methamphetamine, packaged in three separate baggies, along with a loaded 9mm Makarov caliber semi-automatic pistol (the "Makarov Pistol").  Prior to possessing both

the Glock pistol and the Makarov pistol, defendant had been convicted of a felony crime punishable by a term of imprisonment exceeding one year.

Following defendant's arrest on December 8, 2016, defendant was interviewed by law enforcement and admitted that the methamphetamine recovered on June 2, 2013, and December 8, 2016, was his. Defendant also admitted that he picked up approximately one eight-ball of methamphetamine (approximately 3.5 grams) every week.

## III. OBJECTIONS TO PSR AND APPROPRIATE GUIDELINES RANGE

On April 1, 2022, the United States Probation Office ("USPO") filed its Revised Presentence Investigation Report, in which it calculated a total offense level of 14 and determined that defendant falls within Criminal History Category III, resulting in an advisory Guidelines range of 21 to 27 months. (Dkt. 4422 ("Revised Presentence Report" or "Revised PSR" at 4.)

Although the government does not object to the offense level as calculated by USPO, it does object to the calculation of defendant's criminal history. Specifically, USPO did not include any criminal history points for defendant's June 27, 2005, conviction for DUI and Driving on a Suspended License, for which he received a total sentence of 66 days jail and 36 months' probation. (Revised PSR, ¶ 123.) USPO's stated basis for not calculating any criminal history points for this conviction is U.S.S.G. § 4A1.2(e)(3), which states that the Court should not count any prior sentence of less than one year and one month if the sentence is imposed more than "ten years [from] the defendant's commencement of the instant offense." U.S.S.G. §§ 4A1.2(e)(2), (3). Here, while defendant's resentencing is certainly more than ten years after the imposition of sentence in

4

his 2005 DUI case, it remains within ten-years of defendant's
commencement of the *conduct* that led to his offense.  Specifically,
defendant stands convicted of possession of methamphetamine on June
2, 2013, and being a felon in possession of a firearm of December 8,
2016.  Because the sentence for his June 27, 2005, conviction
occurred within ten years of June 2, 2013, that is, his commencement
of the instant offense, it should be counted under U.S.S.G.
§ 4A1.2(e)(2).[1]  He should therefore receive two additional criminal
history points under 4A1.1(b) and 4A1.2(k)(1), bringing his total
criminal history score up to seven and resulting in a criminal
history category of IV.  (Revised PSR ¶ 128; U.S.S.G. § 5A.)

With an offense level of 14 and a criminal history category of
IV, the advisory Guidelines imprisonment range is 24 to 30 months.
U.S.S.G. § 5A.  Defendant also faces a statutory maximum term of
three years supervised release, and an advisory guidelines range of a
one-to-three-year term of supervised release.  (Revised PSR ¶¶ 175-
176.)

Defendant was first arrested on the charges on this case on
December 8, 2016, and was ordered detained pending trial on December
12, 2016.  (Dkt. 883.)  Accordingly, the government believes
defendant has served approximately 64 months in custody, well above
the applicable guidelines range for resentencing.  The government
therefore recommends a sentence of time-served, but respectfully
requests the imposition of a statutory maximum period of supervised

---

[1] Defendant's original Presentence Report correctly included two
criminal history points for this conviction, and the Court previously
included these points in its calculation of defendant's criminal
history.  (Dkt. 2259 at ¶ 128.)

release of three-years due to the aggravating nature of his

underlying conduct.

IV.   **GOVERNMENT'S SENTENCING POSITION**

    **A.**   **A Sentence of Time Served and a Three-Year Period of Supervised Release is an Appropriate Sentence for Defendant Considering the § 3553(a) Factors**

A sentence of time served on all counts of conviction followed by a three-year term of supervised release is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

    1.   <u>Nature and Circumstances of the Offense</u>

The recommended sentence adequately reflects the serious nature of these offenses as well as the broader context of defendant's actions.  Defendant, a self-admitted member of the CR Gang, a drug dealer, and a habitual methamphetamine user, repeatedly possessed loaded firearms in connection with large quantities of extremely pure methamphetamine, despite knowing that he had previously been convicted of a felony crime.  On June 2, 2013, he not only possessed large quantities of methamphetamine along with the Glock Pistol, but the Glock Pistol was loaded with extremely dangerous hollow-point bullets, and the evidence at trial established that this same exact gun had been used less than a week before during a gang related-shooting in CR Gang territory.[2]  The fact that defendant possessed the Glock Pistol so close in time and space to a gang related shooting establishes, at worst, that defendant was involved in the

---

[2] On appeal, defendant also submitted documents indicating that he possessed these dangerous items while in the car with his young daughter, establishing that he was willing to subject his own family to the danger associated with his crimes.

shooting, and at best, that his ties to the CR Gang granted him easy access to both methamphetamine and dangerous firearms.

Worse still, defendant's first arrest with a loaded firearm did not deter his conduct as he possessed both the loaded Makarov Pistol and large quantities of methamphetamine again on December 8, 2016, less than three years later.  He then carried these dangerous items into a local residential neighborhood while attempting to flee from police.  He is ultimately lucky that nobody was hurt as a result of his actions, and his repeated and blatant disregard for the safety of others clearly establishes that he will continue to put his own interests before thinking of anyone else.

In light of defendant's frequent possession of large quantities of methamphetamine, his repeated possession of extremely dangerous firearms and ammunition, and defendant's willingness to possess firearms used in a CR Gang shooting not only in the presence of his family but in a residential neighborhood clearly establishes that defendant poses a continued and significant risk to public safety. These facts are aggravating in nature and warrant the sentence recommended by the government, including a lengthy period of supervised release.

2.   History and Characteristics of Defendant

Defendant's history and characteristics similarly support a time served sentence and a three-year period of supervised release. Defendant grew up with a "middle-class upbringing free from abuse" and had good relationships with his parents and his step-father. (Revised PSR, ¶¶ 137-138.)  He has regular communication with his siblings, his mother, his ex-wife, and a number of his children. (Revised PSR, ¶¶ 138-142.)  Regardless of his supportive upbringing,

defendant still began using drugs, dropped out of high school, and joined the CR Gang.  (Revised PSR, ¶ 150-156.)

It is clear that defendant's criminal conduct is directly tied to his continued use of methamphetamine.  Not only did defendant possess 16.2 grams of methamphetamine on June 2, 2013, he repeatedly sought out large quantities of methamphetamine from co-defendant Antolin in the Spring of 2016 and admitted to law enforcement that he obtained approximately an eight-ball of methamphetamine every week. Defendant's repeated attempts to possess methamphetamine ultimately culminated in his arrest with yet more methamphetamine on December 8, 2016.

Furthermore, by his own admission at trial, defendant possessed both the Glock Pistol and the charged Makarov Pistol specifically because he was in possession of these large quantities of drugs. Indeed, many of defendant's most dangerous actions occurred because defendant felt the need to possess a firearm while in possession of methamphetamine, despite knowing that it was illegal to possess either.  Given defendant's personal history, the government's recommended sentence is appropriate.  Particularly, a lengthy period of supervised release is necessary to monitor defendant and ensure that he does not pose a continued and serious threat to public safety upon his release.

3.   Need for Deterrence and to Protect the Public

A total sentence of time served plus a three-year period of supervised release will similarly promote respect for the law and deter future conduct.  As stated above, defendant has a long history of drug use and weapons possession, yet he continued to possess both methamphetamine and firearms even after prior arrests for the exact

8

same conduct.  Indeed, defendant possessed a gang gun that had been used during the shooting of a rival gang member, and he loaded that gun with hollow-point bullets, which are intended to cause the maximum amount of damage to a target.  Accordingly, a time served sentence and a three-year period of supervised release will ensure the safety of the public from defendant while adequately deterring defendant from continuing to engage in criminal activities. Moreover, given defendant's long and consistent criminal history, a statutory maximum three-year term of supervised release is necessary to ensure that defendant actually complies with the law following his release.  This sentence is appropriate to protect the public from defendant's continued criminal activities while deterring him from engaging in future criminal conduct.

        4.   Policy Statements and Need to Avoid Unwarranted Sentencing Disparities

     Finally, the Court should sentence defendant in a manner that avoids unwarranted sentencing disparities among other defendants with similar records who have been found guilty of similar conduct.  The best way to ensure consistent sentences for similarly-situated defendants across courtrooms, districts, and the country is to apply the Sentencing Guidelines uniformly.  United States v. Saeteurn, 504 F.3d 1175, 1181 (9th Cir. 2007).  Here, a time served sentence and a three-year period of supervised is within the statutory maximum, and imposing such a sentence ensures that the punishment is consistent with other, similarly-situated defendants who repeatedly possess both firearms and large quantities of dangerous drugs.

///

///

**V.     CONCLUSION**

For the reasons set forth above, the government respectfully requests that defendant be sentenced as follows: (1) a time served term of imprisonment on all counts of conviction; and (2) a three-year period of supervised release under the terms previously imposed by the Court.